IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MCNICHOLAS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 21-2344 |
| CENTURY LINK, INC., *et. al.* | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                          **August 31, 2022**

Defendants Lumen Technologies, Inc. (formerly known as Century Link, Inc.) and Level 3 Parent, LLC, (formerly known as Level 3 Communications, Inc.) both move to dismiss Plaintiff James McNicholas's Amended Complaint for lack of personal jurisdiction. For the reasons provided in the following paragraphs, the Motions shall be granted.

## FACTUAL BACKGROUND

James McNicholas is a Pennsylvania citizen, residing in Ambler, Pennsylvania.  In April 2002, McNicholas began working for Defendant Level 3 Parent LLC formerly known as Level 3 Communications, Inc., and Level 3 Communications, LLC.  McNicholas worked out of the Level 3 location in Norristown, Pennsylvania, and eventually became a Senior Account Director who "developed and managed some of the largest and most lucrative accounts in Defendants' Philadelphia region."  Pl's. Am. Compl. ¶¶ 1, 4, 9, 40, 43, 46 ECF No. 21.  Since November 2018, McNicholas reported directly to John Julia, the Sales Director for the Philadelphia Region.  At all times, McNicholas "performed his job duties in a highly competent manner."  Am. Compl. ¶ 45.

In the Spring of 2019, Julia "took both prospects and active accounts that Plaintiff had been working on for years … and reassigned them to a substantially younger Account Director whom he had just recently hired." *Id.* ¶ 50.  On September 6, 2019, McNicholas was terminated from his position, effective September 13, 2019, and was told only his termination was the result of a "business decision." *Id.* ¶¶ 51, 52.  At the time of his termination, McNicholas was 61 years old and was the oldest employee reporting to Julia. *Id.* ¶¶ 55, 57.  He was also the oldest employee in the Philadelphia region and was also the only employee to be terminated.  McNicholas was not offered any alternative positions which may have enabled him to remain employed in another capacity. *Id.* at ¶¶ 56, 59.

On October 1, 2019, McNicholas filed a Complaint with the Pennsylvania Human Relations Commission alleging his termination was the result of unlawful age discrimination.  The Complaint was cross-filed with the Equal Employment Opportunity Commission (EEOC), and on February 25, 2021, McNicholas received a Notice of Right to Sue from the EEOC.  He filed his complaint commencing this action on May 21, 2021, alleging his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et. seq.* and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et. seq.*  McNicholas filed an Amended Complaint on July 23, 2021, in response to which Level 3 Communications, LLC filed an Answer, but Defendants Lumen Technologies, Inc., f/k/a Century Link, Inc. and Level 3 Parent, LLC, f/k/a Level 3 Communications, Inc. filed motions to dismiss for lack of personal jurisdiction.  In a Memorandum Opinion issued on November 15, 2021, Judge Tucker found both general and specific personal jurisdiction over the moving parties to be lacking based on the existing record.  However, noting the difficulty faced by McNicholas without having the opportunity for some discovery, Judge Tucker denied the motions without prejudice and granted the parties leave to take

limited jurisdictional discovery.  The discovery period expired on January 31, 2022, and the movants have re-filed their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  Briefing has closed and the motions are now ripe for adjudication.

**LEGAL STANDARDS**

Under Rule 12(b)(2), a party may assert the defense of lack of personal jurisdiction by filing a motion to dismiss.  To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Where the district court does not hold an evidentiary hearing on personal jurisdiction, however, the plaintiff need only establish a prima facie case of personal jurisdiction; the factual allegations of the non-moving party are taken as true, and all factual disputes are drawn in its favor.  *Danzinger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020); *Shuker v. Smith & Nephew*, *PLC*, 885 F.3d 760, 780 (3d Cir. 2018).  "Unlike a Rule 12(b)(6) motion, the Court's review of a Rule 12(b)(2) motion is not limited to the face of the pleadings and the Court may rely on sworn affidavits submitted by the parties or other competent evidence that supports jurisdiction."  *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463 (E.D. Pa. 2019) (citing *Patterson by Patterson v. F.B.I.*, 893 F. 2d 595, 603-04 (3d Cir. 1990)).

**DISCUSSION**

"At the highest level, the potential outer limits of the personal jurisdictional authority of a federal court are defined by the Due Process Clause of the Fifth Amendment."  *Fischer v. Fed. Express Corp.*, No. 21-1683, ___F.4th___, 2022 U.S. App. LEXIS 20536, at *27 (3d Cir. July 26, 2022) (citing *Pinker v. Roche Holdings, Ltd.,* 262 F. 3d 361, 368-369 (3d Cir. 2002)).  "By contrast, the potential outer limits of the personal jurisdictional authority of a state court are defined by the

Due Process Clause in the Fourteenth Amendment." *Id.* "For a court to exercise personal jurisdiction over a defendant, the defendant must be served process, alerting the defendant to the pendency of the suit and the nature of the claims against [it]." *Id.* at 28. It is therefore necessary to consider Pennsylvania's service of process rules pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), which permits a federal court to exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. *Id.* at 26; *Guzzi v. Morano*, No. 10-cv-1112, 2011 U.S. Dist. LEXIS 115496 at *6 (E.D. Pa. Oct. 6, 2011). Because Pennsylvania's long-arm statute, 42 Pa. C.S. § 5322 permits its courts to exercise personal jurisdiction over non-resident defendants to the "fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States," a "court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause." *Guzzi*, 2011 U.S. Dist. LEXIS at *7 (quoting *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)).

Personal jurisdiction has been said to come in two varieties: general and specific. *Kyko Global, Inc. v. Bhongir*, No. 19-1807, 807 F. App'x 148, 151 (3d Cir. Apr. 1, 2020). A court may exercise general jurisdiction only when a defendant is "essentially at home" in a state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* ___U.S.___, 141 S. Ct. 1017, 1024 (2021). As its name implies, general jurisdiction extends to "any and all claims brought against a defendant," regardless of whether the claims relate to the forum state or the defendant's activities there. *Id.* Specific jurisdiction is different: in order for a court to exercise specific jurisdiction, "the *suit*" must "arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Superior Court,* ___U.S. ___, 137 S. Ct. 1773, 1780 (2017). Thus, specific jurisdiction over a defendant

exists when that defendant has "purposely directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Miller Yacht*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant. *Id.*

In these motions, Defendants Lumen Technologies, Inc., f/k/a Century Link, Inc., and Level 3 Parent, LLC, f/k/a Level 3 Communications, Inc. re-assert their prior arguments that they have insufficient contacts with Pennsylvania to subject them to either general or specific jurisdiction here. After examining the now-developed jurisdictional record, the Court agrees.

As alleged in the Amended Complaint, Defendants Century Link and Lumen are Louisiana corporations with their principal place of business at 100 Century Link Drive, Monroe, LA, 71203, and Level 3 Parent LLC, f/k/a Level 3 Communications, Inc. is a Delaware corporation with principal place of business at 1025 Eldorado Boulevard, Broomfield, CO, 80021. Am. Compl. ¶¶ 5-7. The certifications of movants' legal counsel and corporate paralegal are essentially undisputed and attest to numerous relevant jurisdictional facts.

To begin, Century Link was incorporated under the laws of Louisiana on April 30, 1968. Lumen Technologies' Renewed Mot. to Dis., ECF No. 36, Ex. A. Century Link was a holding company with an ownership interest in some 200 separate companies, corporations and other legal entities in the United States and internationally which were engaged in a variety of businesses, including the communications and technology industries. *Id.* ECF 36, Exh. B, Cert. of Maxwell Kallenberger, ¶¶ 3, 4, 7, 8. On January 22, 2021, Century Link filed Articles of Amendment to its Articles of Incorporation amending its name to Lumen Technologies, Inc. *Id.* ¶¶ 3-4. With the

name change, Lumen Technologies remains a holding company with hundreds of independent and indirect wholly owned subsidiaries, one of which is Level 3 Communications, LLC.  *Id.* ¶ 18.

As when it was operating under the Century Link name, Lumen continues to authorize many of its subsidiaries to use its name for branding purposes, and hence those subsidiaries often use "Lumen" or previously used "CenturyLink" or derivatives thereof as their trade names.  *Id.* ¶¶ 20, 21.  However, Lumen and each of its more than 200 subsidiaries maintain separate financial, accounting and corporate records and all corporate or limited liability formalities are followed to maintain them as separate entities. *Id.* ¶ 9.  The funds belonging to each corporate entity are used appropriately to meet the expenses and financial obligations of that particular entity.  *Id.*  Lumen is not registered to do business in Pennsylvania, does not own, lease, possess or use any real or tangible personal property in Pennsylvania, has no officers, directors or employees, or any bank or financial accounts in Pennsylvania, and does not maintain an office or have a mailing address, telephone number, or any kind of physical presence in the Commonwealth.  *Id.*  ¶¶ 10-15.  Lumen also does not directly make, use, sell or offer to sell any of its own products or services in Pennsylvania, nor is it a party to any contracts with any entity which designates or requires performance by Lumen in Pennsylvania.  *Id.*   ¶¶ 14, 16.  Finally, Lumen never employed McNicholas, and Lumen and Level 3 Communications, LLC are separate and distinct entities that engage in arms-length transactions in accordance with applicable laws.  *Id.*  ¶¶ 17, 22.

Similarly, Level 3 Parent, LLC traces its origins to the formation of Level 3 Communications, Inc. as a Delaware corporation in 1941.  Level 3 Parent, LLC's Renewed Mot. to Dis. Pl's. 1st Am. Compl. ECF No. 37, Ex. B (Cert. of Joan Randazzo) at ¶ 2.  Level 3 Communications, LLC was formed as a Delaware limited liability corporation on December 1,

1997.  ECF 36, Ex. D. [1]  On November 1, 2017, there was a series of mergers involving the Level 3 entities.  First, an entity known as Wildcat Merger Sub 1, LLC merged with and into Level 3 Communications, Inc. with Level 3 Communications, Inc. emerging as the surviving corporation. ECF 37, Ex. A.  Immediately thereafter and one minute later on that same date, Level 3 Communications, Inc. which was a wholly owned subsidiary, merged into and with Wildcat Merger Sub, LLC[2] with Wildcat Merger Sub, LLC emerging as the surviving entity under the name Level 3 Parent, LLC.  *Id.*  The Certificates of Merger filed with the Delaware Secretary of State's Office for each of these mergers both certified the following:

> **SECOND:**    The Agreement and Plan of Merger, dated as of October 1, 2016 (the "Merger Agreement"), among CenturyLink, Inc., Wildcat Merger Sub 1, LLC, Merger Sub 2 and Level 3, setting forth the terms and conditions of the Merger, has been approved, adopted, certified, executed and acknowledged by each of the Surviving Company (identified below) and the merging corporation.

> **THIRD:**    Merger Sub 2 shall be the surviving entity of the Merger (the "Surviving Company"), and the name of the Surviving Company shall be "Level 3 Parent, LLC."

> **FOURTH:**    The Merger shall become effective at 9:17 a.m. (Eastern Time) on November 1, 2017 (the "effective time").

> **FIFTH:**    The Certificate of Formation of Merger Sub 2, as heretofore amended and/or restated, shall be the Certificate of Formation of the Surviving Company from and after the Effective Time, except that the Certificate of Formation shall be amended such that the name of Merger Sub 2 shall be changed to "Level 3 Parent, LLC."

---

[1]   For reasons which are not apparent from the record, on January 14, 1998, Level 3 Communications, LLC changed its name to Level Three Communications, LLC.  Then, two days later on January 16, 1998, the name was changed back to Level 3 Communications, LLC.  ECF 36, Ex. D.

[2]   WWG Merger Sub, LLC, a Delaware limited liability company, is also referred to as "Merger Sub 2" in the Merger Certificate relating to its merger with Level 3 Communications, Inc., which was a wholly owned subsidiary of Merger Sub 2.  ECF 37, Ex. A.

      **SIXTH:**     An executed copy of the Merger Agreement is on file at the offices of the Surviving Company at the following address:  100 CenturyLink Drive, Monroe, Louisiana, 71203.

*Id.*  These documents reflect that CenturyLink, Inc., Level 3 Communications, Inc. and Level 3 Parent, LLC thus became one and the same entity as of 9:17 a.m. on November 1, 2017, under the name "Level 3 Parent, LLC."  ECF 37, Exhibit B (Randazzo Cert.) ¶¶ 2-6.  According to the Randazzo certification, Level 3 Parent, LLC is also a holding company with an ownership interest in Level 3 Financing, Inc., the parent company of Level 3 Communications, LLC, and Level 3 Parent, LLC and all of its direct and indirect subsidiaries maintain separate financial, accounting and business records, and observe all corporate formalities necessary to keep their existences separate and apart from one another.  *Id.* ¶¶ 7-8.  Level 3 Parent, LLC is also not registered to do business in Pennsylvania, does not own, lease, possess or use any real or tangible personal property in Pennsylvania, has no officers, directors or employees, or any bank or financial accounts in Pennsylvania, and does not maintain an office or have a mailing address, telephone number, or any kind of physical presence in the Commonwealth.  *Id.*  ¶¶ 9-12, 14.  Level 3 Parent also does not directly make, use, sell or offer to sell any of its own products or services in Pennsylvania, nor is it a party to any contracts with any entity which designates or requires performance by Lumen in Pennsylvania.  *Id.*  ¶¶ 13, 15.  Finally, Randazzo attests that Level 3 Parent never employed McNicholas - he was employed by and received his W-2's from Level 3 Communications, LLC, an independent and indirect subsidiary of Level 3 Parent, and Level 3 Parent and Level 3 Communications, LLC are separate and distinct entities that engage in arms-length transactions in accordance with applicable laws and do not co-mingle funds.  *Id.*  ¶¶ 16-20.

      McNicholas has not submitted evidence to refute the certifications of the Defendants' corporate representatives.   Instead, he relies upon the alter ego theory of general personal

jurisdiction.  Under that theory, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise "controls" the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (general or specific) exists over the subsidiary. *Shuker*, 885 F.3d at 781.  "The alter ego test looks to whether the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and whether the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Deardoff v. Cellular Sales of Knoxville, Inc.*, No. 19-cv-2642, 2022 U.S. Dist. LEXIS 18444, at *6 (E.D. Pa. Feb. 1, 2022) (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp't. Pracs. Litig.,* 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010), *aff'd,* 683 F.3d 462 (3d Cir. 2012)).  There is a "strong presumption 'against … deeming companies alter egos of each other.'" *Id.* (quoting *Reynolds v. Turning Point Holding Co.,* No. 19-cv-1935, 2020 U.S. Dist. LEXIS 33163 at *3 (E.D. Pa. Feb. 26, 2020)).  "The question of whether an alter ego relationship exists 'should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception.'" *Simeone v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (quoting *In re Latex Gloves Prods. Liab. Litig.*, No. MDL 1148, 2001 U.S. Dist. LEXIS 12757 at *12 (E.D. Pa. Aug. 22, 2001)).

All parties agree that at the time his employment was terminated, McNicholas was employed by Level 3 Communications, LLC, although McNicholas obviously claims he was also employed by all of the other entities named as defendants.  McNicholas must therefore prove the day-to-day operations of Level 3 Communications, LLC are controlled by Lumen/Century Link and Level 3 Parent, LLC in order to overcome their Rule 12(b)(2) motions.  As part of the inquiry into whether an alter ego relationship exists, the following factors are properly considered: (1)

ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation. *Radian Guar., Inc. v. Bolen*, 18 F. Supp. 3d 635, 648 (E.D. Pa. 2014).  "No one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional interrelationship."  *Reynolds v. Turning Point,* 2020 U.S. Dist. LEXIS 33163, at *9 (quoting *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009)).

Although there is no evidence regarding the first, fifth, sixth, seventh, eighth, ninth or tenth factors, the record in this matter does now evince that McNicholas's admitted employer, Level 3 Communications, LLC has several officers and directors in common with Level 3 Parent, LLC, f/k/a Level 3 Communications, Inc. and with Lumen, f/k/a Century Link.  Specifically, the shared officers include the Chief Executive Officer and President, Executive Vice President and Chief Financial Officer, Executive Vice President, General Counsel and Secretary, three Senior Vice Presidents who hold the positions of Controller, Treasurer and head of Global Tax, respectively. and the Vice President, Deputy General Counsel and Assistant Secretary.  Pl's. Opp. to Defs.' Renewed Motions to Dis. Pl's Am. Compl., ECF Nos. 38 and 40, Ex. A.  In addition, as attested to by Mr. Kallenberger, Lumen/Century Link permits and permitted many of its subsidiaries to use the Lumen/Century Link names and/or derivatives of those names as their trade names for

"branding purposes."  Level 3 Communications, LLC evidently did so, as McNicholas's claims that his work email address became jim.mcnicholas@centurylink.com and he received information concerning his "CenturyLink  Health and Life Benefits" from the "CenturyLink Benefit Center" after CenturyLink merged with Level 3 Parent and Level 3 Communications, Inc. has been neither denied nor disputed.   Am. Compl., ¶ ¶ 11-13.   Likewise, neither of the movants denies McNicholas's allegations that following his termination, he received a Pay and Benefits Summary that was part of or referenced the CenturyLink Reduction in Force Policy and named as the resource for initiating COBRA benefits the CenturyLink Service Center, or that the paperwork McNicholas received after he was fired all referenced CenturyLink alone. Am. Compl., ¶ ¶ 14-22. To the extent this may be considered to be usage of a common marketing image and/or common use of a trademark or logo, the Court finds the second, third and fourth factors all support McNicholas's argument that a finding of personal jurisdiction is supported under the alter ego theory.

Were these three factors the only ones to be considered, the Court's decision would be easy. As the above-cited caselaw makes clear, however, there are at least seven other factors worthy of consideration, and no evidence whatsoever has been presented as to them. Obviously, those factors all weigh against a finding of personal jurisdiction over the movants here.  Further, the Third Circuit requires something more than good faith reliance upon an employer's usage of another, and/or related entity's name in hosting company email, and on pension, benefits or severance paperwork, and belief on the part of a plaintiff that he or she was employed by a particular entity to justify piercing the corporate veil.  *See Middlebrooks v. Teva Pharms. USA, Inc.,* No. 17-cv-412, 2018 U.S. Dist. LEXIS 18185, at *15 (E.D. Pa. Feb. 1, 2018) (use of shared email addresses does not amount to level of operational entanglement necessary to support finding plaintiff

11

employed by a single employer or to overcome showing of traditional parent-subsidiary relationship); *Marzano v. Computer Science Corp.*, 91 F.3d 497, 514 (3d Cir. 1996) (holding plaintiff's initial hiring by parent and continued receipt of paychecks and benefits information in parent's name and participation in original company's pension plan not enough to justify holding parent company in action as defendant following merger of plaintiff's division with other, related entity).

The Court therefore finds the evidence presented fails to sustain McNicholas's burden of establishing that exercise of personal jurisdiction over Lumen/Century Link and Level 3 Parent is proper, even accepting the Amended Complaint's factual allegations as true and drawing all factual disputes in his favor.  Notwithstanding the commonality of the companies' officers, use of the Centurylink email domain and use of the Century Link name on his benefits and severance materials, McNicholas has provided no evidence of any coordination of corporate activities or other operational entanglement.  Inasmuch as the test for holding a parent or other related organization subject to jurisdiction under an alter ego theory requires a showing of legal interrelationship, operational entanglement, and control by the parent which is greater than normally associated with common ownership and directorship, it is clear the test has not been met in this case.  The motions to dismiss pursuant to Rule 12(b)(2) must therefore be granted.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,      C.J.